IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01750-GPG-CYC

QSR INTERNATIONAL L.D.C.,

     Plaintiff,

v.

QZCR S.R.L. and
SHEHZAD ALI,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Plaintiff QSR International L.D.C. seeks default judgment against defendants QZCR S.R.L. and Shehzad Ali pursuant to Fed. R. Civ. P. 55(b), including entry of a permanent injunction. After reviewing the motion, the attached exhibits, and the applicable rules and case law, the Court recommends that the motion, ECF No. 33, be granted in part and denied in part, that default judgment enter against the defendants for breach of the Teriyaki Experience agreements and the Smashburger agreements, and that the Court enter a permanent injunction as detailed below.

## BACKGROUND

On June 4, 2025, the plaintiff initiated this suit alleging that the defendants breached a variety of franchise agreements and seeking injunctive relief. ECF No. 1. The plaintiff also sought a preliminary injunction. ECF No. 2. After the Court granted the plaintiff leave to serve the defendants via alternative means, *QSR Int'l L.D.C. v. QZCR S.R.L.*, No. 25-cv-01750-GPG-CYC, 2025 WL 1993699 (D. Colo. July 17, 2025) ("Service Order"), and the defendants were

1

served, ECF Nos. 22 and 24, Judge Gallagher granted the plaintiff's request for a preliminary injunction. *QSR Int'l L.D.C. v. QZCR S.R.L.*, No. 25-cv-01750-GPG-CYC, 2025 WL 2711798 (D. Colo. Aug. 22, 2025) ("Preliminary Injunction Order"). At the plaintiff's request, ECF No. 30, the Clerk of the Court entered default as to both defendants. ECF No. 31. This motion followed, ECF No. 33, and Judge Gallagher referred it to the undersigned, ECF No. 34.

## LEGAL STANDARD

A party may not sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983). However, "[a] party is not entitled to entry of default judgment as a matter of right," *Greenwich Ins. Co. v. Daniel L. Firm*, No. 07-cv-02445-LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)); instead, "it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment." *Id*. at *1. "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc*., 722 F.2d 1319, 1323 (7th Cir. 1983)). Those facts must provide sufficient information to conclude that the plaintiff is entitled to relief. *Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016). Ultimately, the decision whether to enter judgment by default is committed to the sound discretion of the district court. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003). Further, in this case, because the amount of damages sought is a liquidated amount or capable of mathematical calculation, no hearing is necessary. *See Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983).

The Court first considers its jurisdiction. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771–72 (10th Cir. 1997) (citing *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). Then the Court considers whether the undisputed facts provide a basis for relief. *Id*. at 772.

## ANALYSIS

### I.    Subject Matter Jurisdiction

The plaintiff alleges that the Court has subject matter jurisdiction based on diversity of citizenship. ECF No. 1 ¶ 4. The plaintiff is a foreign corporation incorporated in the Cayman Islands with its principal place of business in Denver, Colorado. *Id*. ¶ 1. The plaintiff is therefore a citizen of both the Cayman Islands and Colorado. *See* 28 U.S.C. § 1332(c)(1).

According to the plaintiff, QZCR S.R.L. is a foreign limited liability corporation incorporated in Costa Rica with its principal place of business in Costa Rica. *Id*. ¶ 2. By its default, QZCR S.R.L. admits this allegation. *See Lighthouse for the Blind v. Ki Me Co, LLC*, No. 24-cv-02295-NYW-MDB, 2025 WL 3264465, at *2 (D. Colo. Nov. 24, 2025). Its sole member is Ali, a citizen of Costa Rica. ECF No. 1 ¶¶ 2–3. "For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined not by its state of organization or its principal place of business, but by the citizenship of its members." *Lighthouse for the Blind*, 2025 WL 3264465, at *2 (citing *Siloam Springs Hotel, LLC v. Century Sur. Co*., 781 F.3d 1233, 1237–38 (10th Cir. 2015)). As a result, defendant QZCR S.R.L. is a citizen of Costa Rica. As evidenced by the Declaration of Richard Eisenberg in Support of Plaintiff's Motion for Entry of Default Judgment, ECF No. 33-1, the amount in controversy, exclusive of interest and costs, exceeds $75,000. *Id*. ¶¶ 5–15. Accordingly, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a).

3

Having resolved the question of subject matter jurisdiction, the Court turns to the issue of personal jurisdiction.

## II.    Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In the default judgment context, a plaintiff "need only make a *prima facie* showing [of personal jurisdiction] if the motion is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs.*, 115 F.3d at 773. The Court accepts the well-pleaded allegations of the complaint as true in determining whether the plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look any further." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1058 (D. Colo. 2021). The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendants. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

"The Court must first address the adequacy of service in deciding whether it has personal jurisdiction over [the] Defendant[s]." *Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015). On July 17, 2025, the Court authorized the plaintiff to serve the defendants "via email using the email addresses they have used in their communications with the defendants and their counsel" pursuant to Fed. R. Civ. P. 4(f)(3) and 4(h)(2). Service Order, 2025 WL 1993699, at *3. The Court further ordered that "service shall be deemed effective as of the date on which the materials are transmitted." *Id.* About a week later, the plaintiff completed service as ordered by the Court. ECF No. 19-1 ¶¶ 2–4. Therefore, both defendants were properly served.

4

In considering personal jurisdiction, a court must also "examine whether the exercise of . . . jurisdiction comports with constitutional due process demands." *Dudnikov*, 514 F.3d at 1070. Because jurisdiction here is "based on diversity of citizenship, the [C]ourt's jurisdiction over a nonresident defendant is determined by the law of the forum state." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (citing Fed. R. Civ. P. 4(e)). This means the plaintiff "must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. *Id*. "Because the Colorado long-arm statute extends personal jurisdiction within the state as far as the federal constitutional requirements of due process permit[,] the analysis collapses into a single inquiry as to whether the requirements of due process are satisfied." *Columbia Cas. Co. v. Valor Health Network, LLC*, No. 23-cv-00998-CNS-STV, 2024 WL 3597180, at *4 (D. Colo. July 31, 2024) (quotation marks omitted). The plaintiff argues that personal jurisdiction exists because the defendants consented to this Court's jurisdiction under each of the franchise agreements in dispute. ECF No. 33 at 11. It is true that "[p]arties may consent to personal jurisdiction through the use of a forum-selection clause." *Dappdentral, Inc. v. Guagliardo*, No. 21-cv-00809-PAB-SKC, 2022 WL 3920845, at *5 (D. Colo. Aug. 30, 2022) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985)). And such "clauses generally establish a prima facie case of personal jurisdiction." *Id*. "However, the language of a forum-selection clause is crucial to determining whether a particular action falls within its scope." *Id*. (citing *Kevlion, Inc. v. PetroChina Canada Ltd*., 918 F.3d 1088, 1093 (10th Cir. 2019)).

As Judge Gallagher explained in the Preliminary Injunction Order, the plaintiff and defendants "were parties to Franchise Agreements, which licensed the use of certain trademarks

and systems [ ] at specified locations in Costa Rica [ ].” 2025 WL 2711798, at *1 (citing to ECF

Nos. 1-2, 1-5, 1 at 13, and 27-1). These locations included: four formerly franchised locations of

Teriyaki Experience Restaurants, four[1] formerly franchised locations of Smashburger

Restaurants, and seventeen formerly franchised locations of Quiznos Restaurants. *Id*. at *1–2.

When granting the preliminary injunction, Judge Gallagher considered the language of the

franchise agreements and concluded that: “[t]his Court has jurisdiction over Defendants and the

matter is properly before this Court pursuant to the dispute resolution provisions of the Franchise

Agreements.” *Id*. at 2 (citing to ECF No. 27-1 at 51). Indeed, the franchise agreement relating to

the Teriyaki Experience Restaurants states: “This Agreement shall be governed by and construed

in accordance with the laws of Colorado. The federal and/or state court with jurisdiction in

Denver, Colorado have exclusive jurisdiction for disputes involving this Agreement. The parties

waive any objections to jurisdiction and venue of such courts.” ECF No. 11-1 at 67. The

agreement relating to the Smashburger Restaurants is also governed by Colorado law and

includes consent to jurisdiction to the courts in Denver, Colorado. ECF No. 11-1 at 151. The

Quiznos Restaurants agreement is the same. ECF No. 27-1 at 51; ECF No. 11-1 at 210, 230.

These forum-selection clauses are valid and enforceable. *Arrow Enters. Computing Sols., Inc. v.

Right PriceIT, LLC*, No. 22-cv-01562-NYW-STV, 2023 WL 4178026, at *6–8 (D. Colo. June

26, 2023). Therefore, the Court has personal jurisdiction over the defendants and venue is proper

in this District.

---

[1] Only four Smashburger franchise agreements are at issue, but the parties entered into five
agreements. ECF No. 1 ¶¶ 28–31; Declaration of Richard Eisenberg in Support of Plaintiff’s
Motion for Preliminary Injunction, ECF No. 11-1 at 1–15 (“Eisenberg PI Decl.”) ¶¶ 28–30, 34–
36, 41 (noting that the defendants ceased to operate the Curridabat location).

III.    **Plaintiff's Breach of Contract Claims**

Satisfied that it has jurisdiction, the Court next considers whether the plaintiff is entitled to the relief requested. The Court must consider whether the unchallenged facts constitute a legitimate cause of action such that a judgment should be entered. *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010); *Malibu Media, LLC v. Ling*, 80 F. Supp. 3d 1231, 1239 (D. Colo. 2015). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *See United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006). Undisputed facts set forth in any affidavits and exhibits are also accepted as true. *See Reg'l Dist. Council*, 82 F. Supp. 3d at 1242-43 (D. Colo. 2015). Finally, the relief provided in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

The plaintiff brings six claims for relief: one breach of contract claim for pre-termination actions and one for post-termination actions under the agreements governing each of the three restaurant groups. ECF No. 1 ¶¶ 63–110. Under Colorado law, to prevail on a breach of contract claim, the party seeking to recover must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

A.    **Counts I and IV: Breach of the Teriyaki Experience Agreements**

The plaintiff has established the elements of breach of contract with respect to Counts I and IV. The plaintiff has demonstrated through its allegations and through evidentiary support that it and the defendants entered into agreements governing the operation of four Teriyaki Experience restaurants in Costa Rica, ECF No. 1 ¶¶ 10–12; Eisenberg PI Decl. ¶¶ 12–13; ECF No. 2-1 at 39–93, and that it performed under the contracts. Eisenberg PI Decl. ¶ 17. The

plaintiff has also demonstrated the defendants' breach of those agreements through their failure to pay the required royalties from May through October 2024, ECF No. 1 ¶ 19; Eisenberg PI Decl. ¶ 18, and their continued use of the trademarks and system licensed to them under the Teriyaki Experience agreements. ECF No. 1 ¶¶ 84–85. Finally, the plaintiff has demonstrated injury, including a variety of types of monetary damages resulting from the defendants' breach of the Teriyaki Experience agreements. ECF No. 1 ¶¶ 25, 87; Eisenberg PI Decl. ¶¶ 24–26. Thus, the plaintiff has demonstrated an entitlement to liability against the defendants on its breach of contract claims brought under the Teriyaki Experience agreements. *RE/MAX, LLC v. Argus & Kronos, LLC*, No. 17-cv-02006-MSK-SKC, 2019 WL 1437768, at *6 (D. Colo. Jan. 29, 2019), *recommendation adopted*, 2019 WL 967815 (Feb. 27, 2019).

B.      **Counts II and V: Breach of the Smashburger Agreements**

As noted above, the parties to the Smashburger agreements consented to jurisdiction before this Court. ECF No. 11-1 at 151. However, that was "subject to the obligation to arbitrate" in the agreements. *Id*. The arbitration clause states that the parties to the Smashburger agreements: "agree that . . . all controversies, disputes, or claims between us . . . arising out of or related to: (1) this Agreement or any other agreement between you (or your owners) and us (or our affiliates); (2) our relationship with you; (3) the scope or validity of this Agreement or any other agreement between you (or your owners) and us (or our affiliates) or any provision od any such agreements (including the validity and scope of the arbitration obligation under this Section 17.G, which we and you acknowledge is to be determined by an arbitrators, not a court); or (4) any System Standard, must be submitted for binding arbitration, **on demand of either party**, in accordance with this Article 17.G." *Id*. at 149 (emphasis added). Here, the defendants have not appeared and made such a demand. As a result, the arbitration clause has not been triggered.

8

While the Federal Arbitration Act requires courts to "rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quotation marks omitted), the Court will not sua sponte enforce an arbitration provision, where, as here, no party to the agreement has made a demand for arbitration. *See Ethereal Rejuvenation Clinic, PLLC v. Sentient Lasers, LLC*, No. 24-cv-01898-CNS-KAS, 2025 WL 2418499, at *3 (Aug. 21, 2025) (finding defaulting party waived right to arbitration clause); *cf. The Casiano-Bel Air Homeowners Assoc. v. Philadelphia Indemnity Ins.*, No. 2:16-cv-08549-SVW-SK, 2017 WL 3273654, at *4 (C.D. Cal. Feb. 22, 2017) (teaching that "[t]he arbitration clause's use of the word 'may' refers to the parties' option to demand arbitration" and finding that because a party "exercised its option to demand arbitration," arbitration was mandatory). Given that no party has made a demand for arbitration, the Court will consider whether the plaintiff has met its burden as to Counts II and V.

The plaintiff has established the elements of breach of contract with respect to Counts II and V. The plaintiff has demonstrated through its allegations and through evidentiary support that it and the defendants entered into agreements governing the operation of five Smashburger restaurants in Costa Rica, ECF No. 1 ¶¶ 28–31; Eisenberg PI Decl. ¶¶ 28–30; ECF No. 11-1 at 94–161, and that it performed under the contracts. Eisenberg PI Decl. ¶ 33. The plaintiff has also demonstrated the defendants' breach of those agreements through, among other things, their failure to pay the required royalties, continuing to use the tradename as to the four locations they still operate, and failing to return confidential materials. ECF No. 1 ¶¶ 38–44, 94–95; Eisenberg PI Decl. ¶¶ 34–41. Finally, the plaintiff has demonstrated injury, including a variety of types of monetary damages resulting from the defendants' breach of the Smashburger agreements. ECF No. 1 ¶¶ 44, 96; Eisenberg PI Decl. ¶¶ 40–42. Thus, the plaintiff has demonstrated an entitlement

to liability against the defendants on its breach of contract claims brought under the Smashburger agreements.

### C.    Counts III and VI: Breach of the Quiznos Agreements

The Quiznos agreements present a problem. The plaintiff presented the Court with two different franchise agreements that contain slightly different language regarding arbitration. *Compare* ECF No. 11-1 at 209 *with* ECF No. 27-1 at 48–49. When it provided the first Quiznos agreement, the plaintiff's corporate representative stated that the seventeen agreements "contain the same material provisions." Eisenberg PI Decl. ¶ 46. However, the agreements themselves make clear that at least one material provision is not identical. The franchise agreement identified as "Santa Ana Lindora" includes a mandatory arbitration clause that does not require that either party request arbitration. ECF No. 11-1 at 209. The other agreement, which Ali signed on June 22, 2021, governs the location at Plaza Villa Columbus, AV 7A, Ciudad Colón San José ("Plaza Villa Columbus"). It is similar to that found in the Smashburger agreements, which states that disputes shall be arbitrated "on demand of either party." ECF No. 27-1 at 49, 65. The plaintiff indicates that this "later form of Quiznos Franchise Agreement . . . was used for several of QZCR's Quiznos restaurants," ECF No. 27 at 2, but does not clarify which franchises were established through the different forms of agreement.

With regard to the mandatory arbitration clause in the "Santa Ana Lindora" Quiznos agreement, ECF No. 11-1 at 209, the fact that the plaintiff offers no argument of waiver, *see Ethereal Rejuvenation Clinic*, 2025 WL 2418499, at *3 (noting that the plaintiff bears the burden of proving waiver of an arbitration clause), means a judgment by this Court regarding the defendants' alleged breach of the agreement at this time is not proper. *Postnet Int'l Franchise Corp. v. Jones*, No. 12-cv-03065-WYD, 2013 WL 5449855, at *3 (D. Colo. Sep. 30, 2013).

Instead, the plaintiff should provide further information regarding whether any of the relevant agreements require arbitration and, if so, which of the Quiznos restaurant locations are governed by any such agreement. *See Flexible Funding, Ltd. v. Hare*, No. 18-cv-03720-JCS, 2019 WL 12872785, at *4 (N.D. Cal. Oct. 25, 2019) (noting that the court denied the initial motion for default judgment and ordered the plaintiff to file a motion addressing issues including "how the pleadings and evidence satisfy those standards, and whether the Court has jurisdiction over the claims and the defendants"); *see also Ethereal Rejuvenation Clinic*, 2025 WL 2418499, at *3 (noting that the plaintiff bears the burden of proving waiver of an arbitration clause). While the parties consented to this Court's jurisdiction over them, the "Santa Ana Lindora" agreement requires that the parties arbitrate "all controversies, disputes, or claims between [them] arising out of or related to (i) this Agreement," ECF No. 11-1 at 209, 230, and the plaintiff has not provided sufficient information for the Court to conclude whether that clause of the agreement has been waived and, if so, which locations are impacted.

On the other hand, the Plaza Villa Columbus agreement only requires submission to arbitration "on demand of either party." ECF No. 27-1 at 49. As a result, the Court may consider whether the plaintiff has established the elements of breach of contract with respect to Counts III and VI as to this Quiznos agreement. The plaintiff has demonstrated that it and the defendants entered into this agreement governing the operation of one Quiznos restaurant in Costa Rica, ECF No. 27-1, but the address on the agreement does not correspond to any identified in the complaint. *Compare* ECF No. 27-1 at 65 *with* ECF No. 1 ¶ 48. As a result, without clarification from the plaintiff, the Court will not conclude its breach of contract analysis because it cannot be certain that the facts alleged in the complaint necessarily relate to the franchise location included in the agreement found at ECF No. 27-1. *See* Fed. R. Civ. P. 54(c).

11

Because it is not clear to the Court which form of the Quiznos agreement governs each franchise location, at least one of the Quiznos agreements requires that a breach of contract dispute between the parties be submitted to arbitration, and the plaintiff has not offered any information regarding waiver or argument why this clause does not apply, and because the one proffered Quiznos agreement that does not mandate arbitration is not clearly linked to the complaint, the Court respectfully recommends that the Plaintiff's Motion for Entry of Default Judgment, ECF No. 33, be denied in part as to the Quiznos agreements.

## IV.    Damages

Default judgment cannot be entered until the amount of damages is ascertained. *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. Feb. 2, 1984). "While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true." *JTH Tax, LLC v. Merit*, No. 24-cv-00683-GPG-STV, 2025 WL 1151477, at *8 (D. Colo. Jan. 28, 2025), *recommendation adopted*, 2025 WL 1151454 (D. Colo. Feb. 21, 2025). However, the Court "may accept as true any facts set forth by the moving party in affidavits and exhibits." *Id*.

Through its motion, the plaintiff seeks a permanent injunction and monetary damages. The Court addresses each form of relief below. However, given the above analysis, the Court only considers relief based on the defendants' breach of the Teriyaki Experience agreements and the Smashburger agreements.

### A.    Injunctive Relief

The plaintiff asks that the preliminary injunction entered on August 22, 2025, ECF No. 29, be made permanent. ECF No. 33 at 13. To obtain a permanent injunction a party "must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3)

12

the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quotation marks omitted).

As discussed above, the plaintiff has established actual success on the merits as to the Teriyaki Experience restaurants and the Smashburger restaurants. *See Allstate Ins. Co. v. Cruz*, No. 24-cv-00933-NYW-CYC, 2025 WL 2337093, at \*9 (D. Colo. Aug. 13, 2025); *JTH Tax*, 2025 WL 1151477, at \*9.

The plaintiff has established irreparable harm if the injunction is not issued. After the defendants failed to meet their obligations under the Teriyaki Experience agreements and the Smashburger agreements, the plaintiff sent them notices of termination. ECF No. 11-1 ¶¶ 18–23, 34–39. However, the defendants did not respond to those notices or pay the outstanding amounts due. *Id*. ¶¶ 23, 39. The defendants also continue to operate all of the Teriyaki Experience restaurants and all but one of the Smashburger restaurants and have not returned confidential materials provided in connection with the agreements. *Id*. ¶¶ 25, 41. Ignoring the covenants not to compete, continuing to operate in the same locations, and failing to return confidential information establish irreparable harm. *JTH Tax*, 2025 WL 1151477, at \*9.

The plaintiff has also established that the threatened injury outweighs the potential harm to the defendants of granting the injunction. Each day the defendants continue to operate restaurant locations without authorization, the plaintiff is injured. *Id*. at 9. To be sure, the defendants may suffer harm as a result of a permanent injunction, but they "had several courses of action that [they] could have taken that would have avoided or lessened these harms, but they did not." *Bad Ass Coffee Co. of Haw. v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1251 (D. Utah 2009). These self-inflicted harms therefore do not outweigh the harm to the plaintiff. *Id*.;

13

*Core Progression Franchise LLC v. O'Hare*, No. 21-cv-00643-WJM-NYW, 2021 WL 1222768, at \*10 (D. Colo. Apr. 1, 2021); *see* Preliminary Injunction Order, 2025 WL 2711798, at \*2.

Finally, a permanent injunction will not adversely affect the public interest. As Judge Gallagher concluded when he entered the preliminary injunction, "the public interest weighs in favor of granting injunctive relief to prevent consumer confusion and protect the integrity of trademarks and franchise systems." Preliminary Injunction Order, 2025 WL 2711798, at \*2.

Having concluded that the plaintiff has satisfied all four requirements for a permanent injunction as to the defendants' breach of the Teriyaki Experience agreements and the Smashburger agreements, the Court respectfully recommends that the motion, ECF No. 33, be granted to the extent that it seeks a permanent injunction enforcing the post-termination covenants of the Teriyaki Experience agreements and the Smashburger agreements.

### B.    Monetary Relief

The plaintiff seeks damages for payments it was owed under the Teriyaki Experience agreements and the Smashburger agreements, as well as liquidated damages under the terms of each agreement, and interest. ECF No. 33 at 13–16. In addition to the agreements themselves, the plaintiff submitted the Declaration of Richard Eisenberg in Support of Plaintiff's Motion for Entry of Default Judgment, ECF No. 33-1, to substantiate its request for damages. These materials show that the defendants owe the plaintiff $90,042.58 through July 31, 2025 under the Teriyaki Experience agreements. ECF No. 33-1 ¶ 6; *see Swenson v. Alliance Moving & Storage LLC*, No. 21-cv-01968-CNS-STV, 2023 WL 4458938, at \*3–4 (D. Colo. July 11, 2023); *Re/Max*, 2019 WL 1437768, at \*7; *Einstein Bros. Bagel Franchise Corp. v. J.F.C. Mgmt. Holdings, LLC*, No. 24-cv-03344-CNS-SBP, 2025 WL 1771592, at \*9 (D. Colo. June 9, 2025), *recommendation adopted*, 2025 WL 1795069 (D. Colo. June 26, 2025). This amount includes

unpaid royalites, post-termination sales, and interest. ECF No. 33; ECF No. 33-1 ¶¶ 5–6. In

addition, under the Teriyaki Experience agreements the defendants also owe the plaintiff

$385,690.33 in liquidated damages. ECF No. 33-1 ¶¶ 10–11. Under the Smashburger

agreements, the defendants owe the plaintiff $165,701.06 as well as $851,876.06 in liquidated

damages. *Id*. ¶¶ 7, 12–13.

The plaintiff also seeks post-judgment interest "at the statutory rate until paid." ECF No.

33-5 at 6. Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment

in a civil case recovered in a district court." Because the Court recommends entering a damages

award, it also recommends awarding the plaintiff post-judgment interest from the date judgment

is entered at the rate set in 28 U.S.C. § 1961. *See Einstein Bros*., 2025 WL 1771592, at *10.

**CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS**[2]**:**

- that the Court **GRANT in part** Plaintiff's Motion for Entry of Default Judgment,

  ECF No. 33, and enter default judgment against the defendants for breach of the

  Teriyaki Experience agreements and the Smashburger agreements;

---

[2] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.</u>

- that the Court **DENY in part** Plaintiff's Motion for Entry of Default Judgment, ECF No. 33, to the extent it seeks default judgment for breach of the Quiznos agreements;

- that the defendants be ordered to pay the plaintiff a total of $1,493,310.03 in damages as detailed above;

- that the defendants be ordered to pay the plaintiff post-judgment interest at a rate as set forth in 28 U.S.C. § 1961; and

- that the defendants be **permanently enjoined** as follows:

1. The defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them, are immediately ENJOINED and required to comply with the post-termination obligations as provided in the Teriyaki Experience agreements and the Smashburger agreements, including:

   a. Ceasing to use any of the marks licensed to them by Plaintiff, specifically the trademarks, trade dress, and systems associated with the Teriyaki Experience and Smashburger brands, including but not limited to removing all signage, branding, and other identifying characteristics associated with the Teriyaki Experience and Smashburger brands from these formerly franchised locations (the "Formerly Franchised Locations"):

      i. Teriyaki Experience Restaurants:

         (1) IJ 39 – Paseo Colón, located at 100 al este del Edificio Toyota, San José Costa Rica.

         (2) IJ 53 – Santa Ana, located at Radial Santa Ana Belén, frente a antigua Matra, Pozos Santa Ana, San José, Costa Rica.

         (3) IJ 63 – Multiplaza Escazú, San Rafael de Escazú, San José, Costa Rica.

(4) IJ 43 – Multiplaza del Este, located at Mall Multiplaza del Este, Curridabat, San José, Costa Rica.

ii. Smashburger Restaurants:

(1) #1253 – located at Centro Comercial Lincoln Plaza, Moravia, San José, Costa Rica.

(2) #1254 – located at Boulevard Ernesto Rohrmoser, First Floor Hotel Hilton Garden Inn, Adjacent to Scotiabank Sabana Oeste, Nunciatura, San José, Costa Rica.

(3) #1724 – located at Plaza Amara, San Rafael de Escazú, San José, Costa Rica.

(4) #1759 – re-located at Paseo Colón, entre calles 34 y 36, San José, Costa Rica.

b. Ceasing to operate and refraining from operating any competitive business in violation of the post-term covenants not to compete contained in the Teriyaki Experience agreements and the Smashburger agreements, for a period of two (2) years following the date of this Order, including:

i. Directly, or in concert with any other person or entity, engaging in or operating any business that derives more than 5% of its revenue from the sale of Japanese-style food, located anywhere within a 5-mile radius of the Teriyaki Experience restaurant locations listed above and any other location at which a "Made in Japan Teriyaki Experience" restaurant is operating as of the date of this Order;

ii. Maintaining any direct or indirect interest as an owner (whether of record, beneficially or otherwise), investor, partner, director, manager, officer, employee, consultant, representative, or agent in any restaurant whose gross receipts from the sale of hamburgers represent at least 10% of the business' total gross receipts located or operating within a 5-mile radius of any Smashburger Restaurant location listed

17

above or within a 5-mile radius of any other Smashburger restaurant in operation or under construction as of the date of this Order; and

2.  The defendants shall immediately cease use of and cancel any telephone numbers associated with the Formerly Franchised Locations.

Respectfully submitted this 1st day of July, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge

18